## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BIBLE BELIEVERS; RUBEN CHAVEZ (a.k.a. RUBEN ISRAEL); ARTHUR FISHER; and JOSHUA DELOSANTOS, | Case No. |
| Plaintiffs, | **COMPLAINT**<br>[Civil Rights Action under 42 U.S.C. § 1983] |
| v. | |
| WAYNE COUNTY; BENNY N. NAPOLEON, in his official capacity as Sheriff, Wayne County Sheriff's Office; DENNIS RICHARDSON, individually and in his official capacity as Deputy Chief, Wayne County Sheriff's Office; and MIKE JAAFAR, individually and in his official capacity as Deputy Chief, Wayne County Sheriff's Office, | |
| Defendants. | |

**AMERICAN FREEDOM LAW CENTER**
Robert J. Muise, Esq. (P62849)
P.O. Box 131098
Ann Arbor, Michigan 48113
rmuise@americanfreedomlawcenter.org
(734) 635-3756

David Yerushalmi, Esq. (Ariz. Bar No. 009616;
DC Bar No. 978179; Cal. Bar No. 132011;
NY Bar No. 4632568)
P.O. Box 6358
Chandler, Arizona 85246
david.yerushalmi@verizon.net
(646) 262-0500

Plaintiffs Bible Believers, Ruben Chavez (a.k.a. Ruben Israel), Arthur Fisher, and Joshua DeLosSantos (collectively referred to as "Plaintiffs"), by and through their undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.      This case seeks to protect and vindicate fundamental constitutional rights.  It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' acts, policies, practices, customs, and/or procedures that deprived Plaintiffs of the right to engage in Christian religious speech and expressive activities in the City of Dearborn (hereinafter "Dearborn") during the Annual Arab International Festival (hereinafter "Arab Festival") on or about June 15, 2012.  Defendants' acts, policies, practices, customs, and/or procedures will continue to deprive Plaintiffs of their fundamental constitutional rights at future Arab Festivals.

2.      Plaintiffs seek a declaration that Defendants violated their clearly established constitutional rights as set forth in this Complaint; a preliminary and permanent injunction enjoining the enforcement of Defendants' unconstitutional acts, policies, practices, customs, and/or procedures as set forth in this Complaint; and a judgment awarding nominal damages against all Defendants.  Plaintiffs also seek an award of their reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

3.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this court pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court.  Plaintiffs' claim for damages are authorized under 42 U.S.C. § 1983.

5.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the

events or omissions giving rise to Plaintiffs' claims occurred in this district.

**PLAINTIFFS**

6.      Plaintiff Bible Believers is an unincorporated association of individuals who desire to peacefully share and express their Christian faith with others, including Muslims, through protected free speech activities, including street preaching and displaying signs, banners, and t-shirts with Christian messages and Scripture quotes.  Bible Believers has over 60 chapters nationwide.  Plaintiffs Israel, Fisher, and DeLosSantos are members of Bible Believers.

7.      Plaintiff Ruben Israel, an adult citizen of the United States, is a travelling Christian evangelist who, based upon his sincerely held religious beliefs, desires to peacefully share and express his Christian faith with others, including Muslims, through protected free speech activities, including street preaching and displaying signs, banners, and t-shirts with Christian messages and Scripture quotes.  Plaintiff Israel was the leader and spokesperson for a group of Christian evangelists that attended the Arab Festival in June 2011 and again in June 2012.  Plaintiff Israel engaged in his free speech activity at each Arab Festival as a member of Bible Believers.

8.      Plaintiff Arthur Fisher, an adult citizen of the United States, is a travelling Christian evangelist who, based upon his sincerely held religious beliefs, desires to peacefully share and express his Christian faith with others, including Muslims, through protected free speech activities, including street preaching and displaying signs, banners, and t-shirts with Christian messages and Scripture quotes.  Plaintiff Fisher engaged in his free speech activity at the 2012 Arab Festival as a member of Bible Believers.

9.      Plaintiff Joshua DeLosSantos, an adult citizen of the United States, is a travelling Christian evangelist who, based upon his sincerely held religious beliefs, desires to peacefully

share and express his Christian faith with others, including Muslims, through protected free speech activities, including street preaching and displaying signs, banners, and t-shirts with Christian messages and Scripture quotes. Plaintiff DeLosSantos engaged in his free speech activity at the 2012 Arab Festival as a member of Bible Believers.

## DEFENDANTS

10. Defendant Wayne County is a charter county existing under the laws of the State of Michigan and a body corporate capable of being sued. Defendant Wayne County is responsible for the policies, practices, customs, and procedures of the Wayne County Sheriff's Office, for the training and supervision of the deputies of the Wayne County Sheriff's Office, including the training and supervision of Defendants Richardson and Jaafar, and for those acts committed pursuant to the training, supervision, policies, practices, customs, and procedures that deprived Plaintiffs of their fundamental constitutional rights as set forth in this Complaint.

11. Defendant Benny N. Napoleon is the Wayne County Sheriff. At all relevant times, he was an agent, servant, and/or employee of Defendant Wayne County, acting under color of state law. On behalf of Defendant Wayne County, Defendant Napoleon is responsible for the policies, practices, customs, and procedures of the Wayne County Sheriff's Office, for the training and supervision of the deputies of the Wayne County Sheriff's Office, including the training and supervision of Defendants Richardson and Jaafar, and for those acts committed pursuant to the training, supervision, policies, practices, customs, and procedures that deprived Plaintiffs of their fundamental constitutional rights as set forth in this Complaint. Defendant Napoleon is sued in his official capacity only.

12. Defendant Dennis Richardson is a Deputy Chief with the Wayne County Sheriff's Office. At all relevant times, he was an agent, servant, and/or employee of Defendant Wayne

County, acting under color of state law.  As a Deputy Chief, Defendant Richardson is responsible for the acts, and for enforcing the policies, practices, customs, and/or procedures that were the moving force for the acts, that deprived Plaintiffs of their fundamental constitutional rights as set forth in this Complaint.  Defendant Richardson is sued individually and in his official capacity.

13.     Defendant Mike Jaafar is a Deputy Chief with the Wayne County Sheriff's Office.  At all relevant times, he was an agent, servant, and/or employee of Defendant Wayne County, acting under color of state law.  As a Deputy Chief, Defendant Jaafar is responsible for the acts, and for enforcing the policies, practices, customs, and/or procedures that were the moving force for the acts, that deprived Plaintiffs of their fundamental constitutional rights as set forth in this Complaint.  Defendant Jaafar is sued individually and in his official capacity.

14.     At all relevant times, Defendant Wayne County, through Defendant Napoleon and the Wayne County Sheriff's Office, trained, supervised, and employed its officers, including Defendants Richardson and Jaafar.

15.     Defendant Wayne County's policies, practices, customs, and/or procedures, as enforced through Defendants Napoleon, Richardson, and Jaafar, and Defendant Wayne County's failure to adequately supervise and train the deputies of the Wayne County Sheriff's Office, including the failure to adequately supervise and train Defendants Richardson and Jaafar, were each a moving forces behind the deprivation of Plaintiffs' fundamental constitutional rights as set forth in this Complaint.

### STATEMENT OF FACTS

16.     The City of Dearborn, which is located in Defendant Wayne County, contains one of the largest Muslim communities in the United States.  Consequently, Dearborn is an important place for Plaintiffs' religious speech activities.

17.     For the past seventeen years, the Arab Festival was held in Dearborn.  The 17th Annual Arab Festival was held from Friday, June 15, 2012 to Sunday, June 17, 2012.  Dearborn will continue to hold and sponsor the Arab Festival in the future.

18.     The Arab Festival takes place each year on the city streets in Dearborn; it is not held on the public sidewalks.  At various points, barriers are erected to separate the sidewalks from the festival, which is a street festival held mostly on Warren Avenue.

19.     As in past years, certain roads were closed for vehicle traffic during the Arab Festival.  However, the public sidewalks remained open for pedestrian traffic, including pedestrian traffic not associated with the festival.  For example, local businesses along Warren Avenue remained open, and pedestrians visited these businesses for commercial purposes unrelated to the Arab Festival while the festival was being held.

20.     The public sidewalks along Warren Avenue retain their character as a traditional public forum during the Arab Festival.  The U.S. Court of Appeals for the Sixth Circuit made this ruling in *Saieg v. City of Dearborn*, 641 F.3d 727, 737-41 (6th Cir. 2011).

21.     Due to the large number of Muslims that attend the Arab Festival, the event attracts Christian missionaries and evangelists from across the country.

22.     Prior to 2009, Christians were permitted to freely roam the perimeter of the Arab Festival, handing out religious literature and discussing their Christian faith on the public sidewalks and other public areas in Dearborn.  This included distributing literature on the public sidewalks immediately adjacent to Warren Avenue, where the festival activities take place.  The Christians expressed their religious message and distributed their literature to people who came to the Warren Avenue area to attend the Arab Festival and to those people who came to Warren Avenue to patron the various businesses unrelated to the festival.

23.     Permitting the Christians to peacefully distribute their religious literature and discuss their faith on the public streets and on the public sidewalks adjacent to the Arab Festival never caused any disruption, nor did these peaceful activities block or obstruct in any way the pedestrian traffic along the public sidewalks or streets adjacent to the Arab Festival.

24.     Prior to 2009, there was little to no conflict between the Christians and the Muslims who attended the Arab Festival.  That would change in 2009 when Dearborn, through its Police Department and in cooperation with the American Arab Chamber of Commerce ("AACC"), the sponsor of the Arab Festival, decided to institute and enforce a drastic, and ultimately unconstitutional, restriction on the right of Christians to effectively evangelize at the Arab Festival by restricting their right to distribute literature.

25.     Pursuant to this literature distribution restriction, the Christians were no longer permitted to distribute their religious literature on the public sidewalks adjacent to Warren Avenue.  Moreover, the Dearborn Police Department, in cooperation with the AACC, created an outer perimeter, which had the purpose and effect of keeping the Christians and their religious literature several blocks away, thereby preventing the Christians from effectively evangelizing Muslims at the Arab Festival.

26.     On or about June 16, 2010, Dearborn police officers arrested and jailed four Christian missionaries who were peacefully preaching to Muslims at the Arab Festival.  Upon their arrests, a crowd of Muslims gathered and began applauding and shouting "Allah Akbar." The Christians were criminally charged for allegedly breaching the peace.  After a week-long trial, the jury returned verdicts of "not guilty" for the "breach of peace" offenses.

27.     The literature distribution restriction was successfully challenged on First Amendment grounds by Christian Pastor George Saieg and enjoined in 2011 by the U.S. Court of Appeals for the Sixth Circuit in *Saieg v. City of Dearborn*, 641 F.3d 727 (6th Cir. 2011).

28.     On or about June 2, 2011, Dearborn entered into an agreement with the Wayne County Sheriff's Office, which was acting on behalf of Defendant Wayne County, in which "[t]he Wayne County Sheriff's Department [agreed to] be the lead law enforcement agency within the perimeter of the [Arab] Festival."  The agreement was signed on behalf of Defendant Napoleon.

29.     Pursuant to the Sixth Circuit's opinion issued in *Saieg v. City of Dearborn*, 641 F.3d 727 (6th Cir. 2011), on June 14, 2011, the U.S. District Court for the Eastern District of Michigan entered a judgment in *Saieg v. City of Dearborn*, Case No. 09-12321, that included the following injunction: "the Court hereby invalidates and permanently enjoins Defendants, their officers, agents, servants, employees, and attorneys and any other persons who are in active concert or participation with them, *including the Wayne County Sheriff's Department* and the American Arab Chamber of Commerce, from enforcing the leafleting restriction as set forth in the Opinion of the Sixth Circuit."  (emphasis added).

30.     Defendant Napoleon, through counsel, was served with the judgment and injunction on June 15, 2011.

31.     On or about June 17, 2011, Plaintiff Israel and several other members of Bible Believers, including Plaintiffs Fisher and DeLosSantos, attended the Arab Festival.  When they showed up with their Christian signs, banners, and t-shirts, deputies from the Wayne County Sheriff's Office directed them to a "free speech zone," which was a confined area surrounded by barricades.

32.     Plaintiff Israel and his fellow Christians returned to the Arab Festival on Sunday, June 19, 2011, and deputies from the Wayne County Sheriff's Office told Plaintiff Israel that they were not going to provide the barricaded "free speech zone."  As a result, the Christians walked along the public streets and sidewalks, expressing their Christian message.

33.     While the Christians were peacefully expressing their message, a confrontation ensued with irate Muslims who objected to the Christians' message.  Deputies from the Wayne County Sheriff's Office moved in after the confrontation died down and seized one of the Christians.  The deputies apprehended the Christian, and Defendant Jaafar paraded him past the angry Muslims while they cheered.  The deputies then put the Christian in a squad car and took him to the sheriff's office, where he was eventually released.  The Wayne County deputies did this to appease the Muslim protestors.   In fact, the deputies were observed and filmed encouraging and cheering the crowd on as the Christians were being thrown out of the Arab Festival.

34.     Not to be deterred, intimidated, or deprived of their fundamental constitutional rights, Plaintiffs returned to Dearborn the following year on or about June 15, 2012.  One of the primary reasons for their return was to protest the harsh way in which Christians have been treated at the Arab Festival.

35.     Prior to attending the Arab Festival in 2012, Plaintiff Israel, through counsel, sent a letter on or about May 9, 2012 to Defendant Napoleon and Robert A. Ficano, the Wayne County Executive, informing them that Plaintiff Israel, accompanied by other fellow Christians, would be attending the Arab Festival once again "to peacefully share his Christian beliefs with others, including Muslims, who attend the festival."  The letter further put Defendants on notice of the following: "In the past, Israel and a few friends have attempted to engage in peaceful

expression at this festival.  But upon sharing their Christian beliefs, certain Muslims began physically assaulting Israel and his friends.  When Israel and his friends asked for help from police officers with the Wayne County Sheriff's Department, the officers took the side of the violent Muslims and ordered Israel and his friends to stop their expression."  The letter also set out the relevant and controlling case law demonstrating that the Wayne County Sheriff's Office and its deputies have a constitutional duty to protect the free speech rights of the Christians and to not support the actions of a violent mob intent on suppressing the Christians' speech.

36.     Neither Defendant Napoleon nor Mr. Ficano, nor anyone else from Defendant Wayne County or the Wayne County Sheriff's Office, responded to the May 9, 2012 letter. Consequently, the letter was resent in June 2012, prior to the Arab Festival.  Once again, no one from Defendant Wayne County or the Wayne County Sheriff's Office responded.

37.     On or about June 15, 2012, Plaintiffs and several other Christians went to the Warren Avenue area where the Arab Festival was taking place and wore t-shirts and carried signs and banners expressing their Christian message.  Plaintiffs engaged in their expressive activity along the public sidewalks and other public areas where pedestrian traffic was permitted.

38.     Carrying signs or banners and wearing t-shirts displaying a Christian message constitute speech protected by the First Amendment.

39.     There was no prohibition on carrying signs or banners or wearing t-shirts displaying expressive religious messages at the Arab Festival.  Indeed, a pro-Palestine/anti-Israel organization sells t-shirts at the Arab Festival with a cartoon picture of a young boy urinating on the flag of Israel.

40.     There is no prohibition on carrying signs or banners or wearing t-shirts displaying expressive religious messages on the public sidewalks adjacent to Warren Avenue during the Arab Festival.

41.     Plaintiffs' expressive activity did not block any public sidewalk or other public right-of-way.   During their peaceful speech activity, Plaintiffs kept moving with the other pedestrian traffic along the public rights-of-way.

42.     During Plaintiffs' expressive activity, Plaintiff Israel wore a t-shirt with the message, "Fear God" on the front and "Trust Jesus Repent and Believe in Jesus" on the back.

43.     During Plaintiffs' expressive activity, Plaintiff Fisher wore a t-shirt with the message, "Trust Jesus" on the front and "Fear God and Give Him Glory" on the back.  Plaintiff Fisher carried a banner that said on one side, "Only Jesus Christ Can Save You From Sin and Hell," and on the other side it said, "Jesus Is the Judge, Therefore, Repent, Be Converted That Your Sins May Be Blotted Out."   Plaintiff Fisher also carried a small, hand-held camera to record the event.

44.     Plaintiff DeLosSantos accompanied his fellow Plaintiffs and the other Christians at the Arab Festival to join in the free speech activity and to express a Christian message.

45.     Other messages conveyed on t-shirts, signs, or banners displayed by the Christians included, among others, "Fear God," "Trust Jesus, Repent and Believe in Jesus," "Prepare to Meet Thy God – Amos 4:12," "Obey God, Repent," "Turn or Burn," "Jesus Is the Way, the Truth and the Life.  All Others Are Thieves and Robbers," and "Islam Is A Religion of Blood and Murder."

46.     While Plaintiffs and their fellow Christians were walking along the public sidewalks and peacefully expressing their messages, they were criminally assaulted by a mob of Muslims armed with bottles, rocks, and other debris.

47.     The angry Muslims threw bottles, rocks, and other debris at the Christians.  The Muslims were shouting and blowing horns to harass the Christians.  Some of the Muslims spat at the Christians.  Several Christians, including Plaintiff Israel, were bruised and bloodied by the attacks.  The Muslims also shouted profanities at the Christians and mocked the Christians' faith.

48.     When confronted by the violent and angry Muslims, the Christians would simply hold up their hands to avoid being falsely accused of acting aggressively toward their Muslim attackers.

49.     When Wayne County deputies appeared at the scene of the Muslim violence, the Muslims would momentarily halt their attack, only to resume it once the deputies departed.

50.     Shortly upon Plaintiffs' arrival at the Arab Festival and continuing for approximately the first hour while they were walking on the sidewalks with their signs, banners, and t-shirts, Defendant Jaafar was repeatedly telling Defendant Richardson that Plaintiffs need to be removed and that he (Defendant Richardson) needs to do something about it.

51.     Approximately 30 minutes later, Defendant Jaafar, who was one of the senior officials from the Wayne County Sheriff's Office controlling the law enforcement operations at the festival, decided to take action.  He confronted Plaintiff Israel, and in an angry manner told him that the deputies were not going to protect him or his fellow Christians.

52.     During this confrontation, Defendant Jaafar told Plaintiff Israel that he and his fellow Christians had "the option to leave" or words to that effect.  Plaintiff Israel responded that Defendants had the option "to stand with us" (*i.e.*, protect the Christians engaged in free speech

activity), or words to that effect.  Defendant Jaafar did not respond.  Instead, he abruptly departed, turning a blind eye to the crimes being committed by the Muslims and refusing to provide police protection for the Christians.

53.    Defendant Jaafar is a Muslim, and he was featured in the now-cancelled show, "All American Muslim," which appeared on The Learning Channel (TLC).  Defendant Jaafar sympathizes with the Muslim mob, and he opposes the messages conveyed by Plaintiffs.  As a result, Defendant Jaafar refused to provide any police protection for Plaintiffs, thereby allowing the angry mob to silence Plaintiffs' message based on its content and viewpoint.

54.    In a 2012 televised segment of "All American Muslim," Defendants Jaafar and Richardson were on camera discussing the 2011 Arab Festival.  During this conversation, Defendants Jaafar and Richardson discussed Plaintiffs' signs and banners, describing Plaintiffs' message as "offensive," or words to that effect.

55.    As noted previously, Defendant Jaafar also encouraged other Wayne County deputies, including Defendant Richardson, to silence Plaintiffs' message.

56.    Moments after Defendant Jaafar abruptly departed the scene, Defendant Richardson took over and pulled Plaintiff Israel to the side to discuss the matter.

57.    With blood dripping from his forehead as a result of the Muslim attacks, Plaintiff Israel pleaded with Defendant Richardson to assign just two Wayne County deputies to stand with the Christians during their speech activity, noting that when uniform officers are present, the Muslims stop their criminal assault.  Defendant Richardson refused.

58.    During this conversation, Defendant Richardson criticized Plaintiffs for their speech, motioning toward the Christians at one point and stating, "Look at your people here.  Look it, look it.  This is crazy," or words to that effect.

13

59.     Defendant Richardson then gave Plaintiffs an option: Plaintiffs could either leave the Arab Festival or they would be criminally cited and arrested for disorderly conduct. Defendant Richardson stated, "If you don't leave we are going to cite you for disorderly," or words to that effect.

60.     To avoid being cited and arrested by Defendants, Plaintiffs ceased their free speech activity and departed the area.

61.     While Defendants could not spare just two deputies to allow Plaintiffs to engage in their peaceful speech activity, more than a dozen deputies arrived at the scene to ensure that Plaintiffs and the other Christians departed the Arab Festival area.

62.     The actions of Defendants drew cheers and joyful shouts of "Allah Akbar" from Muslim onlookers who were involved in the violent attacks.

63.     Defendants did not arrest one of the Muslims attackers.

64.     Plaintiff Israel and members of Bible Believers preach at many venues.  They engage in their free speech activity at Mardi Gras, spring breaks, the Academy Awards, and sporting events.   And they preach to other Christian denominations and religions, including Mormons.  Yet, while many might disagree with Plaintiffs' message, Plaintiffs have never been attacked like they were in Dearborn.   And this attack was perpetrated by Muslims who apparently know that they are able to do so with impunity since Defendants will side with them rather than protect Plaintiffs' speech.

65.     By threatening to cite and arrest Plaintiffs for disorderly conduct based on the violent reaction of Muslim hecklers to Plaintiffs' message, Defendants have engaged in content- and viewpoint-based censorship of Plaintiffs' speech.

66.     The Muslims at the Arab Festival were enforcing sharia, which is Islamic law. Under sharia, blasphemy is severely punished.  And in line with the Islamic legal dictates of sharia, the Christian Gospel is treated as criminally offensive speech and violence "for the sake of Allah" is reinforced by arresting or removing the Christians.  In short, sharia is being enforced by a hostile mob, and Defendants are aiding and abetting its enforcement by permitting the Muslims to silence the Christians' message through violence.

67.     Defendants Wayne County and Napoleon have failed to adequately train and supervise the deputies of the Wayne County Sheriff's Office, including Defendants Richardson and Jaafar, on their constitutional duty not to ratify and effectuate a heckler's veto or join and support a violent mob intent on suppressing speech.  Defendants' failure to train and supervise amounts to a deliberate indifference to the rights of persons with whom the deputies, including Defendants Richardson and Jaafar, come into contact.  Here, Defendants disregarded a known or obvious consequence of their actions.

68.     Defendants Wayne County and Napoleon had actual or constructive notice that this omission in their training and supervision causes Wayne County deputies, including Defendants Richardson and Jaafar, to violate citizens' constitutional rights.  After having received notice of this deficiency in training and supervision and its adverse impact on the constitutional rights of citizens within their jurisdiction, Defendants adopted a "policy of inaction" by failing to cure the known deficiency.

69.     As demonstrated in 2011 and again in 2012, there is a pattern of similar conduct that has caused constitutional violations by untrained and unsupervised Wayne County deputies, including Defendants Richardson and Jaafar, demonstrating a deliberate indifference toward this failure to properly train and supervise the law enforcement officers of Wayne County.

70.     Plaintiffs want to return to Dearborn during the Annual Arab Festival in order to engage in their free speech activity.  However, Plaintiffs reasonably fear that if they do return to Dearborn to engage in their free speech activity they will again be attacked by Muslims and given the option by Defendants to either cease their free speech activity or face arrest for disorderly conduct.

71.     Plaintiffs reasonably fear that Defendants will again refuse to perform their constitutional duty to protect Plaintiffs and their free speech activity from the violent Muslim hecklers, thereby supporting the Muslim mob's intent on suppressing Plaintiffs' speech. Consequently, Plaintiffs fear returning to the Arab Festival absent a court order enjoining Defendants from continuing their pattern of illegal and unconstitutional conduct.

**FIRST CLAIM FOR RELIEF**

**(Freedom of Speech—First Amendment)**

72.     Plaintiffs hereby incorporate by reference all stated paragraphs.

73.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

74.     At the time they were ordered to leave the Arab Festival under threat of arrest, Plaintiffs were engaged in speech activity that is protected by the First Amendment.  Defendants' actions injured Plaintiffs in a way likely to chill a person of ordinary firmness from further participation in that activity.  Plaintiffs' constitutionally protected activity motivated Defendants' adverse actions.  Thus, Defendants acted with a retaliatory intent or motive.

75.     By threatening to cite and arrest Plaintiffs for engaging in their free speech activity on or about June 15, 2012, Defendants violated the First Amendment.

76.     It was clearly established on or about June 15, 2012, that Defendants had a constitutional duty not to ratify and effectuate a heckler's veto nor join a moiling mob of Muslims intent on suppressing speech.  Instead, Defendants were required to take reasonable action to protect from violence persons exercising their constitutional rights, including Plaintiffs. By failing to do so, Defendants violated Plaintiffs' rights protected by the First Amendment.

77.     By effectuating the heckler's veto in this case and threatening to cite and arrest Plaintiffs for engaging in free speech activity, Defendants' actions were content- and viewpoint-based in violation of the First Amendment.

78.     Defendants' heckler's veto policy and practice and its enforcement against Plaintiffs as set forth in this Complaint violated Plaintiffs' right to freedom of speech protected by the First Amendment.

79.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

## SECOND CLAIM FOR RELIEF

### (Free Exercise of Religion—First Amendment)

80.     Plaintiffs hereby incorporate by reference all stated paragraphs.

81.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to religious exercise in violation of the Free Exercise Clause of the First

Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

82.     Plaintiffs' expressive religious activity as set forth in this Complaint is protected by both the Free Speech Clause and the Free Exercise Clause of the First Amendment.

83.     Defendants targeted Plaintiffs for selective and disfavored treatment because of Plaintiffs' expressive religious activity in violation of the Free Exercise Clause of the First Amendment.

84.     By targeting Plaintiffs' religious speech activities for disfavored treatment because Plaintiffs are Christian who challenge Islam, Defendants' actions violated the Free Exercise Clause of the First Amendment.

85.     Defendants' adverse actions against Plaintiffs were designed to persecute or oppress Plaintiffs' religion and Plaintiffs' religious practices, which Defendants disfavor, in violation of the Free Exercise Clause of the First Amendment.

86.     Defendants' heckler's veto policy and practice and its enforcement against Plaintiffs as set forth in this Complaint were designed to persecute or oppress Plaintiffs' religion and Plaintiffs' religious practices in violation of the Free Exercise Clause of the First Amendment.

87.     As a direct and proximate result of Defendants' violation of the Free Exercise Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

**THIRD CLAIM FOR RELIEF**

**(Equal Protection—Fourteenth Amendment)**

88.     Plaintiffs hereby incorporate by reference all stated paragraphs.

89.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

90.     By granting use of a public forum to people whose religious views Defendants find acceptable, but denying use to those expressing less favored or more controversial religious views, such as those expressed by Plaintiffs, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

91.     Defendants' heckler's veto policy and practice as applied against Plaintiffs' religious speech activity on June 15, 2012 violated the Equal Protection Clause of the Fourteenth Amendment.

92.     Defendants' threat to cite and arrest Plaintiffs for engaging in their free speech activity on or about June 15, 2012 based on the adverse reaction of Muslim counter-protestors violated the Equal Protection Clause of the Fourteenth Amendment by denying Plaintiffs access to a public forum to engage in their religious speech activities, which Defendants disfavor, while permitting the Muslims to use this forum to engage in a counter-protest that included committing acts of violence, shouting profanities, and mocking the Christians, thereby denying the use of this forum to those whose expressive activities Defendants find unacceptable.

93.     Defendants' threat to cite and arrest Plaintiffs for engaging in free speech activity on June 15, 2012 based on the adverse reaction of Muslim counter-protestors to Plaintiffs'

message violated the Equal Protection Clause of the Fourteenth Amendment because Defendants chose to take adverse action against Plaintiffs due to invidious discrimination.  Defendants threatened to cite and arrest Plaintiffs because they were exercising their fundamental constitutional rights to freedom of speech and the free exercise of religion protected by the First Amendment.  Additionally, Defendants singled out Plaintiffs for arrest because of their Christian message and did not arrest any of the Muslims who were committing criminal acts, shouting profanities, and making other disturbances at the Arab Festival.  Defendants' threat to cite and arrest Plaintiffs has had a discriminatory effect on Plaintiffs and other similarly situated Christians.

94.     Defendants chose to selectively enforce the criminal laws and the policies, practices, procedures, rules, regulations, and restrictions of the Arab Festival against Plaintiffs during the 2012 Arab Festival as set forth in this Complaint out of an arbitrary desire to discriminate against Plaintiffs based on their speech in violation of the Equal Protection Clause of the Fourteenth Amendment.

95.     As a direct and proximate result of Defendants' violation of the Equal Protection Clause, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask this court:

A)      to declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

B)      to permanently enjoin Defendants' heckler's veto policy and practice and its application to Plaintiffs' speech and related activities as set forth in this Complaint;

C)      to award Plaintiffs nominal damages against all Defendants;

D)      to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to

42 U.S.C. § 1988 and other applicable law;

E)      to grant such other and further relief as this court should find just and proper.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

/s/ Robert J. Muise
Robert J. Muise, Esq. (P62849)

/s/ David Yerushalmi
David Yerushalmi, Esq.